IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY f/k/a MONTPELIER U.S. INSURANCE COMPANY,<br><br>    Plaintiff,<br> vs.<br><br>KISAN, INC.<br><br>    Defendant. | Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Mesa Underwriters Specialty Insurance Company ("MUSIC"), formally known as Montpelier U.S. Insurance Company, seeks a declaratory judgment that it is not obligated under the terms of an insurance policy to defend or indemnify the defendant Kisan Inc. ("Kisan") against the claims asserted against Kisan in an underlying civil action pending in the United States District Court for the Eastern District of Texas.

**NATURE OF THE ACTION**

1. This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a judicial declaration concerning coverage under an insurance policy issued by MUSIC.

2. MUSIC issued an insurance policy bearing Policy No. MP0115001000049 to Kisan, Inc. DBA: Motel 6 Airport and Hemang Patel, with stated effective dates from December 13, 2011, to December 13, 2012 (the "MUSIC Policy"). A true and accurate copy of the MUSIC Policy is attached hereto as Exhibit 1.

3. Kisan has sought coverage under the MUSIC Policy for a lawsuit filed in the United States District Court for the Eastern District of Texas, entitled *Jane Doe (C.L.F.) v. G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, Motel 6 Operating, L.P., and Kisan, Inc.*, Case No. 1:23-cv-00303 in the United States District Court for the Eastern District of Texas (the "Underlying Lawsuit"). A true and accurate copy of the Complaint (the "Underlying Complaint") filed in the Underlying Lawsuit is attached hereto as Exhibit 2.

4. Kisan notified MUSIC of the Underlying Lawsuit on September 1, 2023, and requested that MUSIC provide coverage under the MUSIC Policy against the claims asserted in the Underlying Lawsuit.

5. By letter dated November 17, 2023, MUSIC denied any obligation to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit. A true and accurate copy of MUSIC's coverage denial letter is attached hereto as Exhibit 4. Nevertheless, MUSIC has offered to presently fund Kisan's defense of the Underlying Lawsuit, subject to a full reservation of rights, including the right to bring this declaratory judgment action and to terminate funding the defense and recoup defense costs.

6. An actual and justiciable controversy exists between the parties. Kisan contends that MUSIC is obligated to defend and indemnify Kisan against the claims of the Underlying Lawsuit. MUSIC, however, contends that it has no such obligations under the MUSIC Policy because: (a) the claims asserted in the Underlying Lawsuit do not potentially fall within the scope of coverage provided by the MUSIC Policy, (b) various provisions of the MUSIC Policy, including the Assault and Battery Exclusion, apply to exclude coverage for the claims, and

(c) public policy prohibits the insurance of the criminal acts alleged in the Underlying Complaint.

## PARTIES

7. Plaintiff MUSIC is an insurance company incorporated under the laws of the State of New Jersey and with its principal place of business in New Jersey. Accordingly, for purpose of diversity jurisdiction, MUSIC is a citizen of the State of New Jersey.

8. Defendant Kisan is a corporate entity that was incorporated under the laws of the State of Kansas, with its principal place of business located in Wichita, Kansas. According to the Kansas Secretary of State's website, Kisan's status is currently "forfeited" for failure to file annual reports. Accordingly, for purpose of diversity jurisdiction, Kisan is a citizen of the State of Kansas.

## JURISDICTION AND VENUE

9. Jurisdiction over this action exists by virtue of 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. This Court has the authority and jurisdiction to declare the parties' rights and obligations as requested herein pursuant to 28 U.S.C. §§ 2201 and 2202.

11. This Court has personal jurisdiction over the Defendant because Kisan was formed under the law of and has its principal place of business in the State of Kansas.

12. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District. Venue is further appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this controversy occurred in this District.

## FACTUAL ALLEGATIONS

**The Underlying Lawsuit**

13. Jane Doe (C.L.F.) filed the Underlying Lawsuit against Kisan and others, alleging that she was the victim of sex trafficking facilitated and caused, in part, by the conduct of Kisan and the other defendants.

14. The Underlying Complaint alleges that sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of causing the person to engage in a commercial sex act either: (1) before the person turns eighteen years old; or (2) through force, fraud, or coercion.

15. The Underlying Complaint further alleges that traffickers use threats, violence, manipulation, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

16. The Underlying Complaint alleges that sex trafficking has become a public health crisis that has reached epidemic proportions in the United States.

17. The Underlying Complaint further alleges that hotels are the primary place where sex trafficking occurs, and that sex traffickers have been able to reap profits with little risk when attempting to operate within hotels.

18. The Underlying Complaint also alleges that in 2008, Congress extended the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.*, to provide victims of sex trafficking with a civil remedy against those who financially benefit from participation in a venture that they know or should know engaged in criminal sex trafficking.

19. The Underlying Complaint alleges that Kisan owned, operated, controlled, or managed a Motel 6 located at 5736 W. Kellogg Drive, Wichita, Kansas 67209 (the "Motel 6").

20. The Underlying Complaint alleges that between January 2012 and August 2013, Jane Doe was trafficked over fifty times at the Motel 6.

21. The Underlying Complaint further alleges that Jane Doe's trafficker was abusive towards her, and that she feared him.

22. The Underlying Complaint alleges that Jane Doe's sexual exploitation repeatedly occurred in rooms of the Motel 6 and was facilitated by Kisan.

23. The Underlying Complaint alleges that, during the period Jane Doe was trafficked at the Motel 6, there were obvious signs that her trafficker was engaged in sex trafficking; that multiple employees at the Motel 6, including management-level employees, observed or were made aware of these obvious signs of trafficking; and that Kisan knew or was willfully blind to the fact that Jane Doe was being trafficked at the Motel 6.

24. The Underlying Complaint further alleges that Kisan is responsible for the acts, omissions, and knowledge of all employees of the Motel 6 and that Kisan failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to Kisan, of sex trafficking occurring at Motel 6 branded locations, including the subject Motel 6.

25. The Underlying Complaint alleges that despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Motel 6, Kisan continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

26. The Underlying Complaint further alleges that Kisan knew or was willfully blind to the fact that Jane Doe was being trafficked and benefitted from the continued association with her traffickers by providing them a venue in the form of hotel rooms and related services to facilitate Jane Doe's sexual exploitation.

27. The Underlying Complaint alleges that Kisan also facilitated widespread trafficking at the Motel 6, including the trafficking of Jane Doe, by:

   a. "[A]llowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking";

   b. "[C]hoosing not to report known or suspected criminal activity, including sex trafficking according to reasonable practices, industry standards, or applicable franchisor policies and procedures"; and

   c. "[I]mplicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff." (Underlying Complaint ¶ 68.)

28. In the Underlying Complaint, Jane Doe asserts two causes of action against Kisan arising out of these allegations: (1) Perpetrator Liability under the TVPRA; and (2) Beneficiary Liability under the TVPRA.

29. The conduct alleged in the Underlying Lawsuit that forms the basis for Kisan's potential civil liability is criminal conduct under both the TVPRA and Kansas Human Trafficking Law, Kan. Stat. § 21-5426.

30. In the Underlying Lawsuit, Jane Doe seeks monetary relief, which includes alleged: (1) actual damages; (b) direct damages; (c) incidental and consequential damages; (d) mental anguish and emotional distress damages; (e) lost earnings and lost earning capacity; (f) necessary medical expenses; (g) physical pain and suffering; (h) punitive/exemplary damages; (i) pre-judgment and post-judgment interest; (j) attorneys' fees; and (k) court costs.

**The MUSIC Policy**

31. MUSIC issued a commercial insurance policy, bearing Policy No. MP0115001000049 to Kisan, Inc. DBA: Motel 6 Airport and Hemang Patel, with stated effective dates from December 13, 2011, to December 13, 2012.

32. Subject to, among other things, its terms, conditions, retentions, limitations, and exclusions, the MUSIC Policy's Coverage A ("Coverage A") provides in relevant part:

> **COVERAGE A — Bodily Injury and Property Damage Liability**
> **1. Insuring Agreement**
>   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.
>
>     \*   \*   \*
>
>   **b.** This insurance applies to "bodily injury" and "property damage" only if:
>     (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"
>
>     \*   \*   \*

33. The MUSIC Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

34. Coverage A includes an exclusion for "bodily injury" expected or intended from the standpoint of the insured (the "Expected or Intended Exclusion").

35. The Expected or Intended Exclusion provides that the MUSIC Policy does not apply to:

     **a. Expected Or Intended Injury**

     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

36.    Subject to, among other things, its terms, conditions, retentions, limitations, and exclusions, the MUSIC Policy's Coverage B ("Coverage B") provides in relevant part:

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

         \*     \*     \*

37.    The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:"

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

38. Coverage B includes exclusions for "Knowing Violations Of Rights Of Another" and "Criminal Acts."

39. The Knowing Violations Of Rights Of Another Exclusion provides that "[t]his insurance does not apply to:"

  **a. Knowing Violations Of Rights Of Another**

  "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

40. The Criminal Acts Exclusion provides that "[t]his insurance does not apply to:"

  **d. Criminal Acts**

  "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

41. The MUSIC Policy also includes other exclusions that apply to all of the coverages provided under the MUSIC Policy, including Coverage A and Coverage B.

42. The MUSIC Policy contains an Assault and Battery Exclusion by way of Endorsement MUS 01 01 20003 1207 (the "Assault and Battery Exclusion").

43. The Assault and Battery Exclusion provides that:

  **ASSAULT AND BATTERY EXCLUSION**

  This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

44. The MUSIC Policy also contains a Punitive or Exemplary Damages Exclusion by way of Endorsement MUS 01 01 20003 1207 (the "Punitive Damages Exclusion").

45. The Punitive Damages Exclusion provides that:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

> This policy does not apply to any claim or indemnification for punitive or exemplary damages. If a suit is brought against the Insured for a claim falling within the coverage provided by the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. The Company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

**Kisan's Claim for Coverage**

46. Kisan tendered the Underlying Lawsuit to MUSIC, seeking defense and indemnification against the claims asserted in the Underlying Lawsuit against Kisan under the MUSIC Policy.

47. Kisan provided MUSIC with a copy of the Underlying Complaint on September 1, 2023.

48. MUSIC acknowledged receipt of Kisan's notice on September 6, 2023, and advised Kisan that it was reviewing the information received to determine whether there was coverage under the MUSIC Policy.

49. By way correspondence dated November 17, 2023, MUSIC denied it had any obligation under the MUSIC Policy to defend or indemnify Kisan for the claims asserted in the Underlying Lawsuit. Nevertheless, MUSIC offered to fund Kisan's defense of the Underlying Lawsuit subject to a full reservation of rights, including the right to bring this declaratory judgment action and to terminate funding the defense and to recoup defense costs.

**COUNT ONE**
**(Declaratory Judgment – Public Policy)**

50. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

51. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

52. Kisan contends that, under the MUSIC Policy, MUSIC is obligated to provide Kisan with a defense and indemnification against the Underlying Lawsuit, which seeks to impose civil liability on Kisan, both as a perpetrator and beneficiary of Jane Doe's sex trafficking in violation of the TVPRA.

53. Under the TVPRA, 18 U.S.C. § 1591(a)(2), it is a crime to benefit from the participation of sex trafficking, knowing that means of force, threats of force, fraud, coercion or any combination of such means will be used to cause a person to engage in a commercial sex act. Also under the TVPRA, a person or entity can be civilly liable for knowingly benefitting from participation in a venture which that person knew or should have known has engaged in sex trafficking. 18 U.S.C. § 1595.

54. Likewise, under the Kansas Human Trafficking Law, Kan. Stat. Ann. § 21-5426, it is a felony to intentionally benefit from participation in a venture that the person has reason to know has engaged in human trafficking.

55. The Kansas Human Trafficking Law represents a declaration of Kansas public policy that intentionally benefiting from participation in a venture that the person has reason to know involves human trafficking is a criminal act.

56. The Underlying Complaint alleges that Kisan maintained and financially profited from the sex trafficking of Jane Doe in violation of the TVPRA. That same conduct is a criminal violation under both the TVPRA and the Kansas Human Trafficking Law.

57. Indemnifying any person or entity who has engaged in acts that violate the TVPRA or the Kansas Human Trafficking Law is contrary to the public policy of Kansas.

58. Indemnifying any person or entity who has financially profited from sex trafficking is contrary to the public policy of Kansas.

59. It is against public policy to insure against liability stemming from criminal acts such as human trafficking. Indemnification of Kisan for liability based on alleged violations of the TVPRA or for other statutory or common law claims based on the same criminal acts is against public policy.

60. MUSIC is entitled to a declaration that there is no coverage under the MUSIC Policy for the claims asserted against Kisan in the Underlying Lawsuit as a matter of public policy and that it owes no duty to defend or indemnify Kisan.

## COUNT TWO
**(Declaratory Judgment – No "Occurrence")**

61. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

62. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

63. The Underlying Complaint alleges that Kisan knew of and financially benefited from the sex trafficking of Jane Doe.

64. It is also alleged that, despite actual or constructive knowledge of the sexual exploitation of Jane Doe, Kisan did not report the conduct to law enforcement or make any attempt to prevent the sex trafficking on Kisan's property.

65. The MUSIC Policy does not require MUSIC to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit because any "bodily injury" claimed by Jane Doe in the Underlying Lawsuit is not covered under the MUSIC Policy because the injury was not caused by an occurrence. Such injuries were not an "accident" and were the known or expected consequences of Kisan's actions.

**COUNT THREE**
**(Declaratory Judgment – Expected or Intended Exclusion)**

66. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

67. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

68. Kisan contends that, under the MUSIC Policy, MUSIC is obligated to provide Kisan with a defense and indemnification against the Underlying Lawsuit.

69. MUSIC contends that it does not have any obligation to defend or indemnify Kisan for claims alleged in the Underlying Lawsuit because the Expected or Intended Exclusion bars coverage for all of the claims asserted against Kisan in the Underlying Lawsuit.

70. The Underlying Complaint alleges that Kisan knew or was willfully blind to the fact that Jane Doe was being trafficked at the Motel 6 and it benefitted from the continued association with her traffickers by providing them a venue in the form of hotel rooms and related services to facilitate Jane Doe's sexual exploitation.

71. The MUSIC Policy does not require MUSIC to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit because any "bodily injury" claimed by Jane Doe in the Underlying Lawsuit is not covered under the MUSIC Policy because it was expected or intended by Kisan.

72. MUSIC is entitled to a declaration that it owes no duty to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit.

## COUNT FOUR
### (Declaratory Judgment – No "Personal and Advertising Injury")

73. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

74. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

75. The Underlying Complaint does not allege facts that, if true, would establish that Plaintiff's injuries fall within the scope of the Policy's definition of "personal and advertising injury."

76. The MUSIC Policy does not require MUSIC to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit because it does not allege a "personal or advertising injury."

77. MUSIC is entitled to a declaration that it owes no duty to defend or indemnify Kisan under Coverage B against the claims asserted in the Underlying Lawsuit.

## COUNT FIVE
**(Declaratory Judgment – Knowing Violations Of Rights Of Another Exclusion)**

78. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

79. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

80. Kisan contends that, under the MUSIC Policy, MUSIC is obligated to provide Kisan with a defense and indemnification against the Underlying Lawsuit.

81. MUSIC contends that it does not have any obligation to defend or indemnify Kisan for claims alleged in the Underlying Lawsuit because, even if the Underlying Complaint alleged a "personal and advertising injury," the Knowing Violations Of Rights Of Another Exclusion bars coverage for all of the claims asserted against Kisan in the Underlying Lawsuit.

82. The Underlying Complaint alleges that Kisan knew of and financially benefited from the sex trafficking of Jane Doe.

83. It is also alleged that, despite actual or constructive knowledge of the sexual exploitation of Jane Doe, Kisan did not report the conduct to law enforcement or make any attempt to prevent the sex trafficking on Kisan's property.

84. The MUSIC Policy does not require MUSIC to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit because the Knowing Violations Of Rights Of Another Exclusion of the MUSIC Policy excludes coverage for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

85. MUSIC is entitled to a declaration that it owes no duty to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit.

## COUNT SIX
### (Declaratory Judgment – Criminal Acts Exclusion)

86. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

87. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

88. Kisan contends that, under the MUSIC Policy, MUSIC is obligated to provide Kisan with a defense and indemnification against the Underlying Lawsuit.

89. MUSIC contends that it does not have any obligation to defend or indemnify Kisan for claims alleged in the Underlying Lawsuit because, even if the Underlying Complaint alleged a "personal and advertising injury," the Criminal Acts Exclusion bars coverage for all of the claims asserted against Kisan in the Underlying Lawsuit.

90. The Underlying Complaint alleges that Kisan maintained and financially profited from the sex trafficking of Jane Doe in violation of the TVPRA, 18 U.S.C. § 1595.

91. The same conduct alleged in the Underlying Complaint that forms the basis for Kisan's alleged civil liability is a criminal violation under both the TVPRA and the Kansas Human Trafficking Law.

92. The MUSIC Policy does not require MUSIC to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit because the Criminal Acts Exclusion of the MUSIC Policy excludes coverage for "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

93. MUSIC is entitled to a declaration that it owes no duty to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit.

## COUNT SEVEN
### (Declaratory Judgment – Assault and Battery Exclusion)

94. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

95. An actual and justiciable controversy exists between MUSIC and Kisan concerning their respective rights and liabilities under the MUSIC Policy.

96. Kisan contends that, under the MUSIC Policy, MUSIC is obligated to provide Kisan with a defense and indemnification against the Underlying Lawsuit.

97. MUSIC contends that it does not have any obligation to defend or indemnify Kisan for claims alleged in the Underlying Lawsuit because the Assault and Battery Exclusion bars coverage for all of the claims asserted against Kisan in the Underlying Lawsuit.

98. The Underlying Lawsuit seeks to recover damages arising out of assault or battery.

99. The MUSIC Policy does not require MUSIC to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit because the Assault and Battery Exclusion of the MUSIC Policy excludes coverage for "bodily injury" or "personal injury" "arising out of assault and/or battery." Such claims are excluded by the Assault and Battery Exclusion endorsement, which applies even when the assault or battery arises "out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person."

100. MUSIC is entitled to a declaration that it owes no duty to defend or indemnify Kisan against the claims asserted in the Underlying Lawsuit.

## COUNT EIGHT
### (Declaratory Judgment – Punitive Damages Exclusion)

101. MUSIC hereby repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

102. Kisan contends that, under the MUSIC Policy, MUSIC is obligated to provide Kisan with a defense and indemnification against the Underlying Lawsuit.

103. MUSIC contends that it does not have any obligation to defend or indemnify Kisan for claims alleged in the Underlying Lawsuit.

104. The Underlying Complaint in the Underlying Lawsuit seeks punitive damages.

105. The Punitive Damages Exclusion excludes coverage for punitive or exemplary damages.

106. MUSIC is entitled to a declaration that the MUSIC Policy does not provide coverage for any award of punitive or exemplary damages for the claims asserted in the Underlying Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, MUSIC respectfully prays for judgment in its favor as follows:

i) As to Count One, a declaration that, as a matter of public policy, there is no coverage under the MUSIC Policy for the claims asserted in the Underlying Lawsuit and, accordingly, MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit;

ii) As to Count Two, a declaration that MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit because any "bodily injury" claimed by Jane Doe was not caused by an occurrence;

iii) As to Count Three, a declaration that the MUSIC Policy's Expected or Intended Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit;

-18-

iv)     As to Count Four, a declaration that the MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit because the allegations of the Underlying Complaint do not allege a "personal and advertising injury";

v)     As to Count Five, a declaration that the Policy's Knowing Violations Of Rights Of Another Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit;

vi)     As to Count Six, a declaration that the Policy's Criminal Acts Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit;

vii)     As to Count Seven, a declaration that Policy's Assault and Battery Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, MUSIC is not obligated to defend or indemnify Kisan against the Underlying Lawsuit

viii)     As to Count Eight, a declaration that the MUSIC Policy does not provide coverage for any award of punitive or exemplary damages for the claims asserted in the Underlying Lawsuit; and

ix)     Awarding such other relief as the Court may deem just, equitable, and proper.

Dated: November 20, 2023           Respectfully submitted,

**BERKOWITZ OLIVER LLP**

/s/ Carson M. Hinderks
Stacey R. Gilman     KS Bar No. 21892
Carson M. Hinderks    KS Bar No. 25079
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
Phone: (816) 627-0216
Fax: (816) 561-1888
sgilman@berkowitzoliver.com
chinderks@berkowitzoliver.com

*Attorneys for Mesa Underwriters Specialty Insurance Company f/k/a Montpelier U.S. Insurance Company*

-19-